UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK BENNETT and PAULETTE BENNETT,

Plaintiffs,

v. Case No.: 2:21-cv-770-SPC-NPM

SYSTEMS & SERVICES TECHNOLOGIES, INC. and TRUIST BANK,

Defendants.
_______________________________/

**OPINION AND ORDER**[1]

Before the Court is Defendants Systems & Services Technologies, Inc. ("SST") and Truist Bank's Motion to Compel Arbitration (Doc. 73). Plaintiffs Mark and Paulette Bennett responded in opposition (Doc. 79). Also here is Truist's Unopposed Motion for Judicial Notice (Doc. 9). The Court grants both.

**BACKGROUND**

This is a consumer-credit case. The Bennetts took out a loan for an RV ("Debt"). A bank ("Bank") issued the Debt. A loan agreement ("Note") memorializes the parties' relationship. Eventually, Bank transferred the Debt

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

to SST for servicing. It is unclear whether the Bennetts defaulted. At any rate, they eventually agreed with SST to settle the Debt for a lesser amount.

Later, Bank sold the Debt to Truist. SST then sent the Bennetts a collection letter about the Debt. So the Bennetts reviewed their credit reports—finding errors. Eventually, the Bennetts sued Defendants for violating the Fair Credit Reporting Act ("FCRA") and the Florida Consumer Collection Practices Act ("FCCPA") (together, "Claims").

## LEGAL STANDARD

It is a "fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Since once cannot force another to arbitrate matters on which they did not agree, courts must determine validity, enforceability, and scope of an arbitration clause. *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1027 (11th Cir. 2003). These are "gateway questions" judges must resolve before sending a case to the arbitrators.[2] *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2017) (cleaned up). Where state-law governs the Note, Utah law controls. (Doc. 73-1 at 3); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009); *Dasher v. RBC*

[2] There is an exception. Arbitrators must decide gateway issues if the parties' intent is "clear and unmistakable." *Rent-A-Center*, 561 U.S. 69 & n.1. Neither party contends the Note contains a delegation clause. Nor does the Court find the language clear enough to infer one.

*Bank (USA)* (*Dasher 2*), 882 F.3d 1017, 1023 (11th Cir. 2018) ("State contract law determines the existence and contours of parties' agreements.").

## DISCUSSION

Before tackling the merits, the Court grants Truist's unopposed request to take judicial notice of a state-court case. Federal courts can usually take notice of state-court dockets. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-53 (11th Cir. 2020). And the Court grants this Motion. With that settled, the Court turns to the dispute—whether to compel arbitration.

### A. Enforceability

To start, the Bennetts do not challenge the Note's validity or existence (i.e., formation). Instead, they challenge Defendants' contractual standing. The Note is between the Bennetts and Bank. Neither Defendant signed the Note, but they seek to enforce its arbitration clause ("Clause").

A "litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement." *Carlisle*, 556 U.S. at 632; *Lawson v. Life of the S. Ins.*, 648 F.3d 1166, 1170 (11th Cir. 2011). Traditionally, states "allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Carlisle*, 556 U.S. at 631 (cleaned up). Utah is

almost identical. *Inception Minding, Inc. v. Danzig, Ltd.*, 311 F. Supp. 3d 1265, 1274 (D. Utah 2018).

Defendants say they can enforce the Clause under theories of assumption, agency, or equitable estoppel. The Court takes each in turn.

First, Truist can compel arbitration by assumption. "The theory of assumption involves subsequent conduct by the non-signatory indicating the non-signatory is assuming an obligation to arbitrate, despite being a non-signatory." *Hopkins v. Genesis FS Card Servs., Inc.*, No. 3:19-cv-00157-AC, 2020 WL 466636, at *10 (D. Or. Jan. 9, 2020) (applying Utah law), *report and recommendation adopted*, 2020 WL 437544 (Jan. 28, 2020). Truist bought the Debt from Bank. In doing so, it assumed the Note's obligations. Even the Note's language contemplates Bank assigning the Debt to someone else. (Doc. 73-1 at 1 ("The words 'we,' 'us,' 'our,' and 'Lender' refer to . . . Bank . . . and its assignees."), 4 ("ANY HOLDER OF THIS CONSUMER CREDIT NOTE IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER.")).

The Bennetts do not dispute that logic. Instead, they attack whether Truist ever bought the Debt. They latch onto Truist's Answer, which asserts the Debt was "inadvertently included in a bulk purchase" of loans from Bank. (Doc. 41 at 16-17). So the Bennetts say Truist never assumed the Debt and any argument to the contrary is disingenuous. This, however, does not defeat

Truist's assumption theory. Whether the sale was inadvertent is irrelevant because—as the Complaint and its exhibits show—Truist did buy the Debt. (Doc. 22-3 at 2 ("This notice is to advise you that . . . [Truist] has purchased the above referenced account from . . . Bank."), 22-5 at 5 (reporting the Debt as owed to "SST/TRUIST")). According to Truist, it later sold the Debt back to Bank. (Doc. 73 at 3). But intended or not, it owned the Debt for at least a few years—during which the conduct giving rise to the Claims occurred.

As much as the Bennetts challenge the lack of an affidavit, it falls short. They say there must be "direct and specific evidence of an agreement between the parties." *Mason v. Midland Funding LLC*, No. 1:16-CV-2867-WMR, 2021 WL 3017993, at *8 (N.D. Ga. Jan. 18, 2021) (citation omitted), *report and recommendation adopted*, 2021 WL 3017990 (Mar. 23, 2021). That statement (made is a different context) changes nothing. Everyone agrees the Note was a valid agreement between the parties (i.e., the Bennetts and Bank). At issue is whether nonsignatories may enforce that agreement. Validity and enforceability are separate matters. *E.g.*, *Mason*, 2021 WL 3017990, at *7.

So Truist assumed the Debt and can enforce the Clause.

Second, SST can compel arbitration by agency. Via "agency, an agent can assume the *protection* of the contract which the principal has signed." *Inception*, 311 F. Supp. 3d at 1275 (citation omitted). Many "courts have applied this principal to allow for non-signatory agents to avail themselves of

the *protection* of their principal's arbitration agreement." *Id.* (cleaned up). Under this theory, "it matters whether the party resisting arbitration is a signatory or not." *Id.* (citation omitted). Nonsignatories (like SST) "may compel a signatory to arbitrate." *Id.* Even "one-way protection of agents through arbitration may be enforced." *Seaborn v. Larry H. Miller Mercedes Benz*, No. 2:19-CV-941 TS, 2020 WL 1550789, at *3 (D. Utah Apr. 1, 2020).

According to the Amended Complaint, SST was an agent of both Truist and Bank to service the Debt. As an agent, therefore, SST can enforce the Clause. The Bennetts do not challenge this conclusion much. Rather, they say SST cannot compel arbitration because it was an agent of Truist (who never owned the Debt). Again, the Court disagrees as to ownership. What's more, even if Truist never owned the Debt, SST was Bank's agent too. (Doc. 22 at 4). So SST could enforce the Clause even if Truist couldn't.

And third, Defendants contend each could invoke the Clause under equitable estoppel. There is no need to address this alternative rationale given the conclusions above.

In short, Defendants have contractual standing to enforce the Clause.

**B. Arbitrability**

Next, the parties dispute whether the claims are subject to arbitration (i.e., whether they fall within the scope of the Clause). The Clause allows either side to invoke binding arbitration on "any dispute arising under this

Note." (Doc. 73-1 at 4). According to the Bennetts, the Claims might relate to the Note, but they don't arise under it. Defendants disagree.

*1. Choice of Law*

Before getting to that, the Court notes an unbriefed, sticky choice-of-law issue. The Bennetts say substantive federal law governs this scope dispute, citing cases that say as much. Defendants offer no position one way or the other. But appellate courts are wishy-washy on this question. *Compare Entrekin v. Internal Med. Assocs. of Dothan, P.A.*, 689 F.3d 1248, 1251 (11th Cir. 2012) ("Because arbitration is a matter of contract, determining whether a claim falls within the scope of an arbitration agreement is generally a matter of state law." (cleaned up)), *with Lawson*, 648 F.3d at 1170 ("To determine which disputes between the parties to an enforceable arbitration agreement are covered by the language of the arbitration clause, we apply the federal substantive law of arbitrability." (cleaned up)). At times, the Supreme Court suggested state law controls. *Carlisle*, 556 U.S. 624, 630-31 (The Federal Arbitration Act ("FAA") doesn't "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them).").

What seems probable is state law governs scope as a simple matter of contract interpretation; but lurking in the background is the federal preference for arbitration, which courts must consider. *See Volt Info. Sci., Inc. v. Bd. of*

*Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) (When "applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." (internal citation omitted)). No matter the answer, resolving that issue is far outside the briefing. And where relevant, Utah perhaps favors arbitration even more than federal courts. *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 606, 608 (Utah 2002) ("It is the policy of the law in Utah to interpret contracts in favor of arbitration . . . Furthermore, given the strong policy of the law in Utah in favor of arbitration, there is also a strong presumption against waiver of the right to arbitrate." (cleaned up)); *HITORQ, LLC v. TCC Veterinary Servs., Inc.*, 502 P.3d 281, 286 (Utah 2021) ("When the language is ambiguous, there is a presumption in favor of arbitration." (cleaned up)). As the parties rely on general federal law regarding scope—and the difference appears irrelevant—the Court does too.[3]

*2. Analysis*

At bottom, the parties disagree whether the Claims are within the Clause's scope. For support, Defendants list cases with broader arbitration

[3] The Court will not, however, rely on Florida law, which the Bennetts impliedly argue for. Even if state law governs scope, it is undisputed the state would be Utah—not Florida.

provisions. They concerned arbitration for claims "related to" or "connected with" a contract (or some similar language).[4] *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209 (11th Cir. 2021). If the relevant language here had those types of broad phrases, the Court would probably agree with Defendants on scope without much fuss. *See id.* at 1215-16 (compelling arbitration of FCRA claim that "relates to" contract).[5]

The Clause, however, is narrower—it only encompasses "any dispute arising under" the Note. (Doc. 73-1 at 4); *Telecom*, 248 F.3d at 1115 (differentiating "arising under" from "related to").[6] To be sure, "any means all." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1299 (11th Cir. 2021) (cleaned up). Put different, that word widens the scope. *Nailcare Acad. LLC v. Medinails, Inc.*, No. 2:21-cv-405-SPC-NPM, 2022 WL 61196, at *5 (M.D. Fla.

---

[4] Most judges see little difference between variations of the same phrase. For example, "arising out of" and "arising under" generally mean the same thing. *See Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1115 (11th Cir. 2001); *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 386 (11th Cir. 1996); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074-75 (3d Cir. 1997) (Alito, J.).

[5] *See also Brown v. Midland Credit Mgmt., Inc.*, No. 20-CV-4239 (JMF), 2020 WL 5117975, at *2 (S.D.N.Y. Aug. 31, 2020); *Bailey v. Diversified Consultants, Inc.*, 444 F. Supp. 3d 1330, 1335-36 (N.D. Ala. 2020); *Fialek v. I.C. Sys., Inc.*, No. 3:18-cv-136-J-39MCR, 2019 WL 660824, at *3-6 (M.D. Fla. Jan. 24, 2019); *Vanwechel v. Regions Bank*, No. 8:17-CV-738-T-23AAS, 2017 WL 1683665, at *1 (M.D. Fla. May 3, 2017).

[6] *See also Coregis Ins. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) (Sotomayor, J.); *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 877-78 (D.D.C. 2019); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007); Stephen E. Friedman, *The Lost Controversy Limitation of the Federal Arbitration Act*, 46 Univ. of Rich. L. Rev. 1005, 1037-39 (2012) ("'Arising out of" and 'relating to' are two very different concepts.").

Jan. 6, 2022). At the same time, the Clause limits arbitration to disputes "arising under" the Note. (Doc. 73-1 at 4).

"The term 'arising out of' is broad, but it is not all encompassing." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011). To decide if disputes arise from a contract, courts focus on "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." *Telecom*, 248 F.3d at 1116; *Hearn*, 992 F.3d at 1213. "Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract." *Telecom*, 248 F.3d at 1116. Said another way, "'Arising out of' requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract." *Princess*, 657 F.3d at 1218.

"A dispute does not arise out of . . . contract for the purposes of arbitration just because the dispute would not have arisen if the contract had never existed." *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1212-13 (11th Cir. 2021). So but-for causation is not necessarily determinative. *E.g.*, *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 99 (3d Cir. 2018) (Many "courts have resisted the siren call of equating the term arising out of with the concept of but-for causation." (cleaned up)).

Defendants contend their collection and credit-reporting efforts (which underlie the Claims) were foreseeable results of performing contractual duties.

They point out places where the Note contemplates what happens in the event of default, Truist's rights and remedies upon default, and a warning that Truist might send a negative credit report. As the argument goes, Defendants merely responded to a perceived default in a way the Note anticipated. So the resulting Claims, they say, arise under the Note.

For their part, the Bennetts counter. According to them, Defendants violated FCRA and FCCPA, which are not contractual obligations. What's more, the Claims neither rely on the Note nor demand reference to it. So they don't think the Claims arise under.

The Bennetts' point is well-taken. From the plain language, whether the Claims all arise under the Note is a somewhat close call (especially as to SST). While the Claims almost certainly relate to the Note, whether they arise under it is less clear. Still, it is not difficult to tie the Claims flowing from Truist's conduct directly to specified duties. For SST, the connection is attenuated. Neither side addresses this distinction though. And SST acted as Truist's agent to service the Debt. So taking the language in the Note together with the facts, the Court concludes the Claims arise under it.

Even if there is ambiguity in the Clause, the Court must resolve all doubts in favor of arbitration. In general, arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*

*Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). "Stated differently, the FAA 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Dasher v. RBC Bank (USA)* (*Dasher 1*), 745 F.3d 1111, 1115 (11th Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). If an "arbitration agreement is ambiguous about whether it covers the dispute at hand," a "presumption of arbitrability" arises. *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 301 (2010); *Dasher 2*, 882 F.3d at 1022 (explaining when presumption "comes into play"). Of course, courts cannot imagine ambiguity to apply the interpretive dynamite of *Moses H. Cone*. *Kobel*, 904 F.3d at 929. But when—as here—true ambiguity on scope exists, the rule applies. *Dasher 1*, 745 F.3d at 1115.

To be sure, *Moses H. Cone* (and its progeny) is not without detractors. Judge Newsome just thoughtfully explained his misgivings over the precedent. *Calderon*, 5 F.4th at 1215-21 (Newsome, J., concurring). But as it stands, that's the law of land. And any decision to change course is above the Court's paygrade. *E.g.*, *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) (Of course, "a decision by the Supreme Court binds all circuit and district courts.").[7]

[7] Since the issue is unbriefed, there is no need to consider *Moses H. Cone*'s validity.

The Bennetts' other arguments on scope are less compelling. Courts agree "claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citation omitted). So the Claims may fall within the Clause's scope. *See, e.g.*, *Vanwechel*, 2017 WL 1683665, at *1 (compelling arbitration of TCPA, FCCPA, and FDCPA claims related to collection of debt under note). Broad argument to the contrary cannot carry the day. *See Bailey*, 444 F. Supp. 3d at 1336-37 (explaining flaw in *Bazemore*'s reasoning).

In short, the claims against Defendants are within the Clause's scope.

**C. Waiver**

Moving on, the Bennetts contend Defendants waived any right to compel arbitration. Unsurprisingly, Defendants disagree.

The "agreement to arbitrate, just like any other contract, may be waived." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) (cleaned up). "Waiver occurs when both: (1) the party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate; and (2) this participation results in prejudice to the opposing party." *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (cleaned up). A party acts inconsistent with arbitration if—"under the totality of the circumstances"—it "substantially invokes the litigation machinery prior

to demanding arbitration." *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012) (citation omitted). "Prejudice exists when the party opposing arbitration undergoes the types of litigation expenses that arbitration was designed to alleviate." *Overdraft*, 754 F.3d at 1294 (cleaned up).

Federal law controls the waiver analysis. *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). Notably, "any party arguing waiver of arbitration bears a heavy burden of proof." *Gutierrez v. Wells Fargo Bank, N.A.*, 889 F.3d 1230, 1236 (11th Cir. 2018). Waiver is inherently case-specific. *Grigsby & Assocs. v. M. Sec. Inv.*, 635 F. App'x 728, 731 (11th Cir. 2015). So the relevant procedural history follows.

While in state court, Truist answered without mentioning arbitration. Two weeks after removal, the Bennetts amended as a matter of course. In the interim, the Court entered its normal FCRA Fast-Track Scheduling Order. That Order stayed all discovery except some limited initial disclosures common in FCRA cases. It also ordered early mediation within four months (in line with the Court's usual practice for FCRA cases).

About a month after removal, SST answered the Amended Complaint. In doing so, it raised arbitration as an affirmative defense. The Bennetts moved to strike (in part) because the Answer referenced arbitration as a defense. But the Court denied that motion without prejudice, allowing the Bennetts two weeks to refile. Just before the Bennetts moved to strike,

Defendants told them of the intention to compel arbitration. Apparently, counsel wanted the parties to discuss the motions to strike and compel together because "the motion to compel arbitration would likely moot the motion to strike." (Doc. 79-1 at 2). This conversation occurred a month and a half after removal.

Truist answered, and SST amended its answer. Both parties listed arbitration as affirmative defenses. They filed these pleadings about two months after removal. Then, the Bennetts got three extensions of time to refile their motion to strike. Despite the extensions, they never refiled the motion.

While the Bennetts settled with two Defendants, the Claims against Truist and SST were unresolved. So the parties went to Court-ordered mediation. They impassed, then filed a Case Management Report (which the Court ordered). That Report included a jury demand from the parties. Ten days later, Defendants moved to compel arbitration. In all, about four months passed between removal and the Motion.

While the Bennetts says all these actions taken together suggest waiver, the Court is unconvinced. Based on the totality of these circumstances, Defendants did not waive arbitration.

Consenting to another parties' removal (on its own) does not amount to waiver. *See Schriever v. Navient Sols., Inc.*, No. 2:14-cv-596-FtM-38CM, 2014 WL 7273915, at *4-5 (M.D. Fla. Dec. 19, 2014); *Halim v. Great Gatsby's Auction*

*Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008). Nor does filing an answer. *Leitzke v. JPMorgan Chase Bank, N.A.*, No. 8:19-cv-2174-T-33AEP, 2020 WL 8669703, at *5 (M.D. Fla. Jan. 27, 2020); *Sherrard v. Macy's Sys. and Tech. Inc.*, 724 F. App'x 736, 740 (11th Cir. 2018) (noting "neither filing and answer nor waiting four months to seek arbitration was sufficient to constitute waiver" (citation omitted)). Compliance with initial disclosures and early case management requirements aren't necessarily inconsistent with arbitration either. *Murdock v. Santander Consumer USA Inc.*, No. 2:15-cv-268-FtM-38CM, 2016 WL 11467548, at *5 (M.D. Fla. June 23, 2016), *report and recommendation adopted*, 2016 WL 3913135 (July 20, 2016); *Gimenez v. Am. Sec. Ins.*, No. 8:08-cv-2495-T-24-TGW, 2009 WL 257540, at *2 (M.D. Fla. Feb. 3, 2009); *Gomez v. Allied Pros. Ins.*, 457 F. Supp. 3d 1351, 1364-65 (S.D. Fla. 2020). And delay is usually not enough unless "coupled with other substantial conduct inconsistent with an intent to arbitrate." *Grigsby*, 635 F. App'x at 733.

A party waives arbitration when it "substantially participates in litigation to a point inconsistent with an intent to arbitrate." *Overdraft*, 754 F.3d at 1294. Defendants did not substantially participate in litigation. They merely complied with early requirements set by Federal Rule and the Court's efficient FCRA deadlines. Neither Defendant did anything substantial in this case (e.g., filing dispositive motions or demanding discovery). While Defendants' lawyer asked, "when Plaintiffs are available for deposition," that

statement came eleven days before the Motion and apparently no depositions occurred. (Doc. 79-2 at 2). In fact, it was the Bennetts who advanced litigation by serving written discovery.

Nor did the litigation reach a point inconsistent with arbitration. Instead, SST put arbitration on the Bennetts' radar a month after removal. Around a month and a half after removal, Defendants told the Bennetts they planned to compel arbitration. And Defendants filed the Motion less than four months after removing—when the Bennetts didn't move to strike and early mediation did not resolve the case before full-blown discovery. This is not the type of litigation conduct amounting to implied waiver. *See, e.g.*, *Palmer v. Navient Sols., LLC*, No. 3:17-cv-657-J-39JBT, 2018 WL 1863829, at *2-3 (M.D. Fla. Jan. 31, 2018), *report and recommendation adopted*, 2018 WL 11344770 (Apr. 18, 2018); *Britt v. IEC Corp.*, No. 20-60814-CIV-ALTMAN/Hunt, 2021 WL 4147714, at *13-14 (S.D. Fla. Sept. 13, 2021).

What's more, waiver occurs only when there is "prejudice to the opposing party." *Overdraft*, 754 F.3d at 1294. On this point, the Bennetts say Defendants cannot force them to start over in arbitration, and Defendants failed to explain the delay. Again, the Court does not believe the four-month delay between removal and Motion significant considering these facts. What's more, the Bennetts impliedly try to shift the burden. As the ones seeking to avoid arbitration, they must show waiver. *Gutierrez*, 889 F.3d at 1236. In

other words, the Bennetts must establish prejudice. They failed to do so. There is no indication any delay, conduct, or expense here warrants a waiver finding. *See, e.g.*, *Citibank, N.A. v. Stok & Assocs.*, 387 F. App'x 921, 924-25 (11th Cir. 2010); *Britt*, 2021 WL 4147714, at *15.

One final point. The Clause's plain language suggests a party could invoke the right late in litigation. (Doc. 73-1 at 4 ("Either of us may elect to arbitrate even if an action has been filed in court, so long as no judgment has been rendered.")). This buttresses the conclusion no implied waiver exists.

At bottom, the Court finds Defendants did not waive the right to arbitrate. *See Gutierrez*, 889 F.3d at 1236 ("[T]he key ingredient in the waiver analysis is fair notice to the opposing party and the District Court of a party's arbitration rights and its intent to exercise them.").

**D. Conferral**

Finally, the Bennetts argue Defendants' Local Rule 3.01(g) conferral was insufficient. They are right the Court expects substantive discussions, not sending an ultimatum by email. (Doc. 75 at 3); *Schwartz v. ADP, Inc.*, No. 2:21-cv-283-SPC-MRM, 2021 WL 4295274, at *2 (M.D. Fla. Sept. 21, 2021). Even if Defendants violated 3.01(g) in that regard, the Court finds judicial economy—the purpose underlying the Rule—best served by ruling on the Motion. Given the briefing, it would only waste everyone's time and money to require the

parties to chat and refile these papers. So this issue does not change the conclusion on arbitration.

**E. Stay**

Having concluded Defendants are entitled to an order compelling arbitration, the Court must "either stay or dismiss." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). If the issues are arbitrable, a requested "stay is mandatory." *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004). The Court, therefore, grants Defendants' request to stay the action pending arbitration. *See* 9 U.S.C. § 3.

Accordingly, it is now

**ORDERED:**

1. Defendant's Unopposed Motion for Judicial Notice (Doc. 9) is **GRANTED**.
2. Defendants' Motion to Compel Arbitration and Stay the Proceedings (Doc. 73) is **GRANTED**.
3. The parties are **DIRECTED** to arbitrate this case promptly—in accordance with the contract and its arbitration clause.
4. This case is **STAYED** until the parties advise the Court that (1) arbitration has been completed and (2) the stay should be lifted or the case should be dismissed. The parties are **DIRECTED** to notify the

Court of such matters **within seven (7) days** of the arbitration concluding.

5. The parties are **DIRECTED** to file a joint report on the status of arbitration **on or before August 4, 2022**, and **every ninety (90) days after** until arbitration concludes.
6. The Clerk is **DIRECTED** to add a stay flag on the docket.

**DONE** and **ORDERED** in Fort Myers, Florida on May 10, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record